IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TIFFANY CARONIA,<br>    PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER<br>OF SOCIAL SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§   CIVIL ACTION NO. 4:12-CV-595-Y<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Tiffany Caronia ("Caronia") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").  Caronia applied for SSI on January 8, 2009, alleging that her disability began on June 1, 2002. (Tr. 15, 227.)

After her application for benefits was denied initially and on reconsideration, Caronia requested a hearing before an administrative law judge ("ALJ"). (Tr. 101–02, 144–46.)  The ALJ held a hearing on May 11, 2010, and issued an unfavorable decision on May 27, 2010. (Tr. 103–22.)  On June 2, 2011, the Appeals Council vacated the ALJ's decision and remanded the case.  (Tr. 123–26.)  Caronia appeared at the subsequent administrative hearing on October 26,

2011, after which the ALJ issued another unfavorable decision on January 24, 2012. (Tr. 20–31, 70–100.) On June 27, 2012, the Appeals Council denied Caronia's request for review, leaving the ALJ's second decision as the final decision of the Commissioner in her case. (Tr. 1, 8.) Caronia subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416 (2013). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing

any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* § 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Caronia presents the following issues:

1. Whether the ALJ's decision must be remanded for the payment of benefits because the Social Security Ruling directs a finding of disability; and

2. Whether the vocational expert's testimony was inconsistent with the *Dictionary of Occupational Titles*.

(Pl.'s Br. 1.)

### IV. ALJ DECISION

In his January 24, 2012 decision, the ALJ concluded that Caronia was not disabled within the meaning of the SSA. (Tr. 26.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process. At the first step, the ALJ found that Caronia had not engaged in any substantial gainful activity since January 8, 2009—the date of Caronia's protective filing. (Tr. 15.) At the second step, the ALJ found that Caronia suffered from "bipolar disorder; mild lumbar dextroscoliosis; anxiety disorder; bilateral carpal tunnel syndrome; status-post bilateral release surgeries; history of thoracic fusion; left hip bursitis; endometriosis; status-post laparoscopy and chromatubation; history of cervical cancer, in remission; right knee arthritis; personality disorder; post-traumatic stress disorder ("PTSD"); and migraine headaches" and that such disorders were severe impairments under the SSA. (Tr. 15.) At the third step, the ALJ found that Caronia's severe impairments did not meet or equal the severity of one of the impairments contained in the Listing. (Tr. 15.)

The ALJ then found that Caronia had the RFC to perform sedentary work with the following limitations:

> [Caronia] can lift and carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and walk about 2 hours in an 8-hour workday. She can sit about 6 hours in an 8-hour workday. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally kneel, crouch, and stoop. She can never balance or crawl. She can only

occasionally handle and finger with her bilateral upper extremities. She can frequently reach and feel with the bilateral upper extremities. She has no visual or communicative limitations. She cannot work around hazardous moving machinery or at unprotected heights. She cannot work around excessive vibration. She can understand, remember, and carry-out short, simple instructions and make judgments on simple work-related decisions. She can have only incidental face-to-face contact with the public. She can interact appropriately with supervisors and co-workers. She can respond appropriately to usual work pressures and changes in a work setting as described by this residual functional capacity.

(Tr. 16–17.)

Next, at the fourth step, the ALJ found that Caronia had no past relevant work performed at the level of substantial gainful activity to which she could return. (Tr. 25.) Finally, at the fifth step, the ALJ opined that, based on Caronia's RFC and on her age, education, and work experience, Caronia retained the ability to perform unskilled work existing in significant numbers in the national economy and, thus, was not disabled and had not been disabled at any time through the date of the decision. (Tr. 25–26.)

## V. DISCUSSION

A. **Issue One: Should the ALJ's Decision be Remanded for the Payment of Benefits Because the Social Security Ruling Directs a Finding of Disability?**

Caronia argues in her first issue that she is disabled because the ALJ limited her to occasional handling and fingering, but most unskilled, sedentary occupations require good use of both hands. (Pl.'s Br. 15.) Citing Social Security Ruling ("SSR") 96-9p and SSR 83-10, Caronia asserts that this limitation to occasional handling and fingering, along with her limitation to no balancing, result in a significant erosion of the unskilled sedentary occupational base and render her disabled as a matter of law. (Pl.'s Br. 17.) Caronia also complains that the VE was unable to state the extent of "erosion of the number of occupations" in the unskilled, sedentary occupational base, and, therefore, the ALJ's decision fails to address the issue of erosion of the occupational base of jobs available to Caronia. (Pl.'s Br. 16; Reply 3.)

When a claimant's RFC includes nonexertional limitations and, thus, does not exactly coincide with the definition of any one of the full ranges of work, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. *See* SSR 83-12, 1983 WL 31253, at *2 (eff. Feb. 26, 1979). In this situation, the ALJ considers the extent of any erosion of the occupational base and assesses its significance. *See id.* When the extent of erosion of the occupational base is not clear, the ALJ should consult a vocational resource, such as the VE. *See id.* "Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." *Id.* at *5.

The ALJ assessed Caronia with manipulative and balancing limitations, and the Court recognizes that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5 (eff. Feb. 26, 1979). SSR 96-9p repeats the idea that most unskilled sedentary jobs require good use of the hands and fingers and then goes on to state, "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996) (emphasis in original). Also, "[i]f an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." *Id.* Consequently, "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." *Id.* at 34480. Caronia argues that, because the ALJ found that she was limited to only occasional handling and fingering, she did not have

6

"good use" of her hands. Thus, her "significant" manipulative limitations—as well as her balancing limitation—should have directed a finding of disability.

However, while SSR 96-9p "states that a finding of 'disabled' *usually* applies when the full range of work is significantly eroded, it does not require such a finding." *Davis v. Astrue*, No. 3:10-CV-958-P, 2011 WL 444776, at *7 (N.D. Tex. Jan. 7, 2011) (emphasis in original), *adopted in* 2011 WL 417489 (N.D. Tex. Feb. 7, 2011). SSR 96-9p goes on to state that "the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability." 61 Fed. Reg. at 34481. There may be a number of occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with an eroded sedentary occupational base. *Id.* At step five, the Commissioner has the burden to prove that the claimant can engage in some kind of substantial gainful work that exists in the national economy, i.e., work that exists in significant numbers either in the region where the claimant lives or in several regions of the country. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a); *Crowley*, 197 F.3d at 198. The regulations specifically state that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

Caronia correctly observes that the VE did not testify as to how many occupations were eroded from the unskilled sedentary occupational base in light of Caronia's additional limitations.[1] Instead, the VE testified that a person with Caronia's RFC could still perform the

---

[1] At the hearing, the following exchange occurred between Caronia's attorney and the VE:

Q [Caronia's attorney] How many total occupations are there in the sedentary, unskilled occupational base?

A [VE] I don't know. I don't have that information with me and I can't -- I just can't guess it.

7

specific occupation of call-out operator, and the VE provided the total number of jobs existing in Texas and in the national economy.[2] The ALJ's decision contains all of this information provided by the VE. (Tr. 25.) Thus, the Court finds that the ALJ's step five finding satisfied the statutory and regulatory requirements requiring proof that Caronia can engage in substantial gainful work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(b). The ALJ's decision also appropriately includes an example of an occupation with jobs that Caronia can do and a statement of the incidence of such work in Caronia's region or in several regions of the country. *See* SSR 83-12, 1983 WL 31253, at *5.

Caronia provides no legal authority for the proposition that the VE's testimony was insufficient for failing to specifically state the number of occupations eroded from the total unskilled sedentary occupational base, and in light of the ALJ's compliance with the statutory and regulatory requirements, the Court declines to make such a finding. *See Amason v. Colvin*, No. 4:11-CV-805-A, 2013 WL 1413023, at *11 (N.D. Tex. Mar. 1, 2013) (concluding that the VE's failure to testify as to how many occupations were eroded from the list of unskilled light and sedentary occupations did not require reversal because the VE provided examples of jobs that the plaintiff could still perform), *adopted in* 2013 WL 1408731 (N.D. Tex. Apr. 8, 2013). Because the ALJ found that Caronia could perform jobs existing in significant numbers, the

---

> Q So I guess if you don't know the total number then you couldn't tell me what kind of erosion of the number of occupations there would be given the judge's hypothetical with unskilled work? You couldn't tell me how many would be remaining?
>
> A That's right.

(Tr. 96–97.)

[2] In addition to the call-out operator occupation, the VE also testified that a person with Caronia's RFC could perform the occupations of conveyor line worker and information clerk. In her second issue, Caronia asserts that these occupations are not compatible with her RFC. The Court need not consider this challenge to the remaining two occupations identified by the VE because, as discussed *infra* at pages 11–12, the VE's testimony regarding the number of call-out operator jobs available is sufficient to constitute substantial evidence supporting the ALJ's decision.

ALJ's finding was not inconsistent with SSR 96-9p. *See Davis*, 2011 WL 444776, at *7. Remand on Caronia's first issue is not required.

### B. Issue Two: Was the Vocational Expert's Testimony Inconsistent with the *Dictionary of Occupational Titles*?

In Caronia's second issue, Caronia asserts that the testimony of the vocational expert ("VE") conflicts with the *Dictionary of Occupational Titles* ("DOT").[3] Caronia argues that because the ALJ based his decision on this unreliable testimony, the decision was not supported by substantial evidence. (Pl.'s Br. 18–19.)

At the hearing, the ALJ asked the VE whether there were any jobs in the national or regional economy that a hypothetical person with Caronia's RFC could perform. (Tr. 93.) In response, the VE identified three occupations: (1) call-out operator, with 2,000 to 3,000 positions in Texas and 50,000 positions in the national economy; (2) conveyor line worker, with 3,000 to 4,000 positions in Texas and 60,000 to 80,000 positions in the national economy; and (3) information clerk, with 3,000 to 5,000 positions in Texas and 50,000 to 60,000 positions in the national economy. (Tr. 93–94.) The ALJ then asked the VE, "Does your testimony conform to the DOT?" The VE replied, "Yes." (Tr. 94.) Based on this testimony, the ALJ found in his decision at step five that "there are jobs that exist in significant numbers in the national economy that [Caronia] can perform." (Tr. 25.)

Under SSR 00-4p, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000). As part of the ALJ's duty to fully develop the record of a hearing, the ALJ "will inquire, on the record, as to whether or not there is such consistency." *Id.* When there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit

---

[3] Employment and Training Administration, U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed., rev. 1991) [hereinafter DOT].

a reasonable explanation for the conflict before relying on the VE evidence to support a determination of disability. *Id.* Neither the DOT nor the VE testimony automatically "trumps" the other when there is a conflict. *Id.* A conflict must be resolved by determining whether the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in the determination or decision how any conflict that has been identified was resolved. *Id.* at 75759.

As an initial matter, the Court finds that the ALJ complied with his duty under SSR 00-4p by asking the VE, on the record, whether her testimony conformed to the DOT. (Tr. 94.) The VE responded in the affirmative, and Caronia's counsel failed to present any conflicts through cross-examination. Therefore, it appears to the Court that nothing at the hearing triggered any reason for the ALJ to elicit a "reasonable explanation" for any possible conflicts. *See Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-3126-L, 2013 WL 632104, at *13 (N.D. Tex. Feb. 4, 2013) (citing *Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp. 2d 607, 613–14 (E.D. Tex. 2009)), *adopted in* 2013 WL 628561 (N.D. Tex. Feb. 20, 2013).

Caronia contends that, nevertheless, such conflicts did arise between the VE's testimony and the DOT with regard to all three occupations identified by the VE. To begin with, she points out that the call-out operator occupation requires a reasoning development level of 3, which she claims is not compatible with her RFC restriction to "short, simple instructions" and "simple work-related decisions." (Pl.'s Br. 21.) A reasoning development level of 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." 2 DOT, *supra*, app. C, at 1011, *available at* 1991 WL 688702. Contrary to Caronia's argument, "the fact that instructions may be various, furnished in multiple forms, or detailed, does not preclude them from being simple." *Gaige v. Astrue*, No. 4:12-CV-

10

008-A, 2013 WL 1291754, at *14 (N.D. Tex. Mar. 1, 2013), *adopted in* 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013). The DOT's definition of level 3 reasoning development does not, on its face, indicate that jobs with a reasoning development level of 3 involve more than simple, repetitive work. *Id.*

Furthermore, the VE testified that the call-out operator occupation is "unskilled," and this characterization is corroborated by the DOT.[4] The classification of the call-out operator occupation as "unskilled" indicates that it is "by definition simple." *Gaige*, 2013 WL 1291754, at *14. Consequently, the Court concludes that there is no conflict between the VE's testimony and the information contained in the DOT with regard to the call-out operator occupation.

Caronia also argues that the VE's testimony regarding the other two occupations that the VE identified (i.e., conveyor line worker and information clerk) conflicts with the DOT as well. The Court will not discuss these alleged conflicts herein. Even assuming that conflicts do exist with regard to these two occupations, such conflicts would not require remand because the VE's testimony regarding the number of call-out operator jobs available is sufficient to constitute substantial evidence supporting the ALJ's decision. *See Gaspard*, 609 F. Supp. 2d at 617 ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.") (emphasis in original) (citing *Evans v. Chater*, 55 F.3d 530, 532–33 (10th Cir. 1995)). The VE testified that there were 2,000 to 3,000 call-out operator job positions in Texas, and 50,000 in the national economy. (Tr. 94.) Thus, the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Caronia] can perform" is supported by

---

[4] According to the DOT, the call-out operator occupation has a specific vocational preparation ("SVP") level of 2. *Call-Out Operator*, 1 DOT, *supra*, at 207, *available at* DICOT 237.367-014 (Westlaw). SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." 2 DOT, *supra*, app. C, at 1009, *available at* 1991 WL 688702. Unskilled work corresponds to an SVP of 1 to 2. SSR 00-4p, 65 Fed. Reg. at 75760.

substantial evidence. *See* 20 C.F.R. § 416.966(a) ("[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."); *see also, e.g.*, *Gaspard*, 609 F. Supp. 2d at 619 (stating that various appellate courts have found 500, 650–900, and 1400 jobs in a state to be sufficient to constitute a significant number of jobs); *Mercer v. Halter*, No. 4:00-CV-1257-BE, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (concluding that 500 jobs in Texas and 5,000 jobs in the national economy constituted a significant number of jobs). Remand is not required on Caronia's second issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until July 25, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 11, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE